SPENCER et al. v. BERTRAND.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1904.)

No. 1,052.

1. COLLISION—BARGE LYING AT DOCK—NEGLIGENT MANAGEMENT OF RAFT.

The finding of a trial court that an injury to a barge while lying at a wharf in the Willamette river was due to the negligent navigation of a steamboat towing a raft of logs, by reason of which the raft struck the barge, *held* sustained by the evidence.

Appeal from the District Court of the United States for the District of Oregon.

J. C. Moreland, for appellants.

Wm. T. Muir, R. R. Giltner, and Veazie & Freeman, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a libel in admiralty to recover damages for injuries received to the barge of appellee by the alleged negligence of appellants. It is alleged that the steamboat Charles R. Spencer was towing a raft of logs up the Willamette river, and handled the raft so negligently that it was thrown against Mr. Bertrand's scow and sunk it. The court, upon the testimony, found that the "libelant was on the 30th day of October, 1901, the owner of the barge described in the libel, and that on the evening of the said day, while said barge was lying at the landing slip on the east side of the Willamette river, in Portland, Oregon, at the north end of the dock of the Portland Flouring Mills Company, where said barge had a good right to be, the said barge was struck and injured by a raft of logs then and there being towed up the Willamette river by the steamboat Charles R. Spencer—said raft of logs being about 780 feet in length and 50 feet in width, and being towed by a hawser about 900 feet in length"—and that "said collision and injury were caused by the negligence, inattention, and want of proper care and skill on the part of the steamboat Charles R. Spencer, her master and crew, and through no fault, omission, or neglect on the part of said barge or the libelant," and assessed the damages at $113.50 and $67.16 costs.

It is claimed in the assignments of error that the court erred in making these findings and in entering the judgment. The argument of appellants is that it was a physical impossibility, from all the testimony, for the injury to have been occasioned to the barge or scow of the appellee. There were several theories advanced by the defendants in the court below as to how the injury might have occurred. At the close of the testimony the court said:

"There is only one conclusion that can be reached as to how this accident occurred, consistent with the testimony and the physical facts shown to exist

in the case. Upon the testimony offered for the defendant, I should think it impossible for such an accident to have occurred, were it not for the fact that it did occur. * * * I don't see any other way for it. There is another thing about it—another fact to be considered in this connection—and that is well established, I think. That is the fact that the barge was swung around upstream. Something must have pulled that barge upstream at that time. The night watchman found her in that condition. What did it? It must have been the same accident that caused the staving in of those boards that swung the barge upstream. So my conclusion is that the tug Spencer is responsible for the accident."

There was a controverted question as to the damages. It was difficult to find out the precise amount of damages from the repairs made. Upon this question the court said:

"I take it that there were quite extensive repairs made on that barge, and that she came off the ways a great deal better than she was before the accident. The Spencer cannot be charged with all these expenses. The best I can do is to divide them between the parties."

Appellee was the only witness at the trial who testified as to what actually happened. He testified that:

"The Spencer passed by with the logs about, as near as I could judge, between five and six o'clock. Of course, I couldn't tell just exactly what time, but I know it wasn't over six, because it was just getting dark there and then. She towed up right along this channel, and then, when she got by us pretty well, she kind of swung over on the west side, and by doing so throwed the tail end of the raft—say about 300 feet of it, or such a matter as that; 200 feet, anyway, I should judge—throwed it right up onto the stern of the barge. Q. Did you see this? A. Yes, sir. Q. Where were you at that time? A. I was right on deck at that time it occurred. Q. On the deck of the barge? A. Yes, sir."

He then described the course of the Spencer and the raft of logs from the time he first saw them until after the accident.

In the light of the facts disclosed by the record, we are unwilling to say that the court erred in its findings, or that the judgment is erroneous. The judgment of the District Court is affirmed, with costs.